UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MORANDA M. POWELL | CIVIL ACTION NO. 12-0447 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BOOKER T. WASHINGTON GUEST CARE, LLC | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 17) filed by Defendant Booker T. Washington Guest Care, LLC ("BTW"). BTW moves for dismissal of Plaintiff Moranda M. Powell's ("Powell") religious discrimination, retaliation, invasion of privacy, and various Louisiana state law claims. See id. Powell opposed the motion. See Record Document 19. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Powell's claims are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

BTW is a skilled nursing home that provides residential, long term care to the elderly and disabled. See Record Document 17-1 at ¶ 1. BTW is a private business and not a government entity. See id. at ¶ 39. BTW has a non-discrimination policy that prohibits discrimination based on religion. See id. at ¶ 2. BTW has postings in the facility regarding its non-discrimination policy. See id. at ¶ 3.

On approximately June 14, 2011, Powell was hired as an licensed practical nurse to work on an as needed basis. See id. at ¶ 4. She was hired by Keisha Broudy ("Broudy"), Director of Nursing. See id. Powell did not become a full-time employee until September of 2011, approximately a month before her termination on October 24, 2011. See id. at ¶ 5.

When Powell was hired, she signed an acknowledgment that she received the personnel policies, including the non-discrimination policy. See id. at ¶ 6. She also signed an Employee Code of Conduct which prohibits "disobedience or insubordination to supervisors" and acknowledged understanding that failure to abide by the Employee Code of Conduct could lead to discharge. Id. at ¶ 7.

BTW has a Dress Code Policy[1] that, among other things, states "[w]earing wraps, bandanas, scarves, or do rags, etc. will not be permitted." Id. at ¶ 8. The Dress Code Policy states the "only exceptions will be for religious or medical purposes." Id. at ¶ 9. Powell admitted in her deposition that she became aware of this rule while she was employed. Id. at ¶ 10. Powell disputes these facts regarding the Dress Code Policy by stating that the policy is "ambiguous" and "also requires covering long hair when serving meals." Record Document 19-2.

On Saturday, October 15, 2011, Angela Frierson ("Frierson"), Administrator of BTW, was working at the facility and came upon Powell in the hall. See id. at ¶ 12. Frierson asked Powell about something she was wearing on her head. See id. at ¶ 13. BTW contends that Frierson told Powell not to wear the head gear again. See id. at ¶ 14. Powell disputes this statement, alleging that she was told not to wear "the beanie she was wearing that day" again. Record Document 19-2.

Powell is not Muslim. See Record Document 17-1 at ¶ 15. Powell never disclosed her religious beliefs to anyone with BTW. See id. at ¶ 16. Powell has no religious beliefs

---

[1] A copy of the Dress Code Policy was submitted by BTW. See Record Document 17, Exhibit D-011.

that require the wearing of any type of "beanie" or headband. See id. at ¶ 17. The head gear Powell wore on October 15, 2011 had no religious purpose. See id. at ¶ 18. Powell received no written discipline for the October 15, 2011 incident. See id. at ¶ 19. She was only counseled by Frierson. See id.[2]

In response to her encounter with Frierson, Powell wrote a letter dated October 15, 2011, and sent it to the Gamble Guest Care corporate office on Business Park Drive in Shreveport, Louisiana. See id. at ¶ 21. Powell believes this letter was "protected activity under Title VII." Record Document 19-2. The letter contained numerous complaints, many of which had nothing to do with religion or her encounter with Frierson on October 15, 2011. See Record Document 17-1 at ¶ 22. The letter stated that Powell's "religion came into question because of something [she] was wearing on [her] head." Id. at ¶ 23. The letter included general complaints about the management of the facility and Frierson. See id. at ¶ 24.

Matt Machen ("Machen"), Chief Operating Officer for Gamble Guest Care, received the letter, reviewed it, and followed-up with Frierson. See id. at ¶ 25. In an e-mail exchange between Machen and Frierson, he asked Frierson about the letter. See id. at ¶ 26. Frierson responded to Machen and explained the October 15, 2011 incident. See id. Based on his review of the information received from Frierson, Machen found that there had been no violation of any company discrimination policies, including any religious discrimination policies. See id. at 27.

---

[2]Powell contests the facts in this paragraph by stating, "These statements do not relieve the Center from compliance with Title VII for retaliation." Such response does not comply with Rule 56(e) or LR 56.2.

Frierson talked to Broudy at some point shortly after October 15, 2011, about Powell and another employee wearing "head gear" in violation of the Dress Code Policy. Id. at ¶ 28. Frierson asked Broudy, as Director of Nursing, to monitor compliance with the policy. See id. Powell contests this fact, maintaining that "monitor" does not mean "harass." Record Document 19-2.

Frierson did not tell Broudy about Powell's letter to the Gamble Guest Care corporate office. See Record Document 17-1 at ¶ 29. Broudy was never aware of the letter until after Powell's lawsuit was filed. See id. at ¶ 30. Broudy issued all written disciplinary warnings to Powell during her employment. See id. at ¶ 31. None of the written disciplinary warnings issued to Powell during her employment were issued by Frierson. See id. at ¶ 32.

On October 24, 2011, a mandatory in-service was held for the staff of BTW in a meeting room. See id. at ¶ 33. While Frierson was talking during the meeting, Powell asked questions about a personal disciplinary issue. See id. at ¶ 34. Frierson asked Powell to be quiet, but Powell did not stop speaking. See id. Frierson asked Powell to leave the meeting when she would not stop asking her question(s). See id. Powell refused to leave and Frierson asked someone to call 911. See id. Powell did not clock out until after the 911 call was made and the Shreveport Police Department arrived at the facility. See id. The police asked Powell to leave. See id.

Powell contests these facts and contends that she was not the only employee who asked questions during the meeting on October 24, 2011. See Record Document 19-2. She recalls that several employees were upset over violations of dress code policies. See id. She further maintains that she "had clocked out and was leaving the premises when the

police arrived." Id.

On October 24, 211, Broudy, as Powell's immediate supervisor, completed a Separation Notice Alleging Disqualification indicating that Powell was being terminated for "insubordination." Record Document 17-1 at ¶ 35. Frierson did not tell Broudy to fire Powell. See id. at ¶ 36. Broudy does not recall discussing Powell's termination with Frierson prior to completing the Separation Notice. See id. at ¶ 37. Broudy completed the Separation Notice without input from Frierson. See id. at ¶ 38. Powell contests these facts, stating that no one told her she was fired until she called back the following day and that the Separation Notice included a reference to a disputed incident of cursing which Powell denies. See Record Document 19-2.

Powell filed the instant lawsuit on February 15, 2012. See Record Document 1. In her Complaint, Powell alleged "perceived" religious discrimination, retaliation, and various other claims under Louisiana law. Id. at ¶¶ 13, 14, 18. Yet, in her deposition, Powell stated that she is making a claim for religious discrimination, not "perceived" religious discrimination. See Record Document 17, Exhibit D-512 at 116. BTW has now filed a Motion for Summary Judgment seeking dismissal of Powell's religious discrimination, retaliation, and invasion of privacy claims. See Record Document 17. BTW also seeks dismissal of any claims Powell has attempted to make under various Louisiana Revised Statutes and the Louisiana Constitution. See id.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).[3] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## II. Religious Discrimination.

Powell has alleged religious discrimination. See Record Document 1 at ¶¶ 14, 15. In her deposition, Powell stated that her religious discrimination claim was based on the fact that she was asked about her religion at work. See Record Document 17, Exhibit D-512 at 116-117. In her opposition to the Motion for Summary Judgment, Powell gave scant attention to her religious discrimination claim:

On Saturday, October 15, 2011, the administrator, . . . Frierson approached

---

[3]The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and Advisory Committee Notes.

> . . . Powell and asked her what was on her head. When Powell answered, she was asked, "Are you Muslim or something?". Powell told her "no"; then asked her what her religion had to do with her hair wear. Frierson said Powell was starting a trend; and asked her not to wear it again. . . . Powell knew that there should be no discrimination because of religion in the workplace, so she reported the incident to the corporate office.

Record Document 19 at 1-2.

"A prima facie case of religious discrimination is established when an employee can show that: (1) . . . she had a bona fide religious belief that conflicted with an employment requirement; (2) the employer was informed of that belief; and (3) the employee was discharged for failing to comply with the conflicting employment requirement." Bruff v. N. Mississippi Health Servs., Inc., 244 F.3d 495, 500 n. 9 (5th Cir. 2001). Powell's claim fails under this standard. She admitted that she was not alleging she was discriminated against based on her actual religious beliefs or practices. Rather, at best, she contends she should not be asked about religion at work. See Record Document 17, Exhibit D-512 at 116. Powell further admitted that she is not Muslim, she never disclosed what her religion was to anyone with BTW, and she has no religious beliefs that require the wearing of any type of "beanie" or headband. See id., Exhibit D-512 at 49, 103-104. Based upon her own admissions, there is no competent summary judgment evidence indicating that Powell had a bona fide religious belief that conflicted with an employment policy or that BTW was even informed about her religious beliefs. Accordingly, summary judgment is **GRANTED** as to Powell's religious discrimination claim.

### III. Retaliation.

Powell's complaint alleged "retaliation for asking about violations of confidentiality." Record Document 1 at ¶ 17. Yet, during her deposition and again in her opposition, Powell

alleged that she was retaliated against for sending the October 15, 2011 letter to the corporate office. See Record Document 17, Exhibit D512 at 103-105; Record Document 19 at 3-4. Powell argues that she did not receive any written discipline until after she sent the letter to the corporate office. See Record Document 17, Exhibit D-512 at 103.

"To present a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) [she] engaged in an activity protected by Title VII; (2) [she] was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004). "If a plaintiff succeeds in making a prima facie case, the burden then shifts to the defendant to proffer a legitimate rationale for the underlying the employment action." Id. If the defendant meets this burden, then the burden "shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation." Id. "Title VII retaliation claims must be proved according to traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, — U.S. —, 133 S. Ct. 2517, 2533 (2013).

Powell contends that she has established a prima facie case for retaliation, specifically arguing that her letter of October 15, 2011 was the protected activity. See Record Document 19 at 4-5. However, even if this Court were to assume prong one (protected activity) and prong two (adverse employment action), Powell has failed to raise a fact issue as to prong three, that is, a causal link between the October 15, 2011 letter and her termination.

"To demonstrate the causal prong of a retaliation claim on summary judgment, a

plaintiff must at least raise a question about whether the person who [was responsible for the adverse employment action] was aware of the protected activity." Davis v. Dallas Area Rapid Transit, 383 F.3d at 320, citing Manning v. Chevron Chem. Co., 332 F.3d 874, 883 (5th Cir.2003). Here, Broudy was the BTW management employee who not only issued all written disciplinary warnings to Powell, but also completed the Separation Notice as to Powell. Yet, Powell has failed to show, through competent summary judgment evidence, that Broudy was aware of the October 15, 2011 letter. It is undisputed that Frierson did not tell Broudy about Powell's letter to the Gamble Guest Care corporate office. See Record Document 17-1 at ¶ 29. Broudy was not aware of the letter until after Powell's lawsuit was filed. See id. at ¶ 30. Thus, Powell has failed to designate specific facts on this issue showing that there is a genuine dispute for trial.

Notwithstanding, even if this Court were to assume that Powell established a prima facie case of retaliation, BTW has stated a legitimate nondiscriminatory reason for Powell's termination, i.e., her insubordination at a staff meeting requiring the police to be called to ensure that she left the premises. See Record Document 17, Exhibit D-508 at ¶¶ 19-20. Thus, the burden shifts back to Powell to demonstrate that BTW's articulated reason was a pretext for retaliation.

Relying upon a mixed motives/motivating factor analysis, Powell argues that she has shown that BTW's recited reason was pretext. See Record Document 19 at 6. However, as previously noted, the Supreme Court recently clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, — U.S. —, 133

S. Ct. 2517, 2533 (2013). Additionally, the only support Powell musters for her retaliation claim is the timing of her termination. See Record Document 17, Exhibit D-512 at 110; see also Record Document 19 at 2. This is fatal to her claim, as courts have routinely held that timing along is insufficient to sustain a retaliation claim. See Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation. However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."); Zaffuto v. City of Hammond, 308 F.3d 485, 493 on reh'g in part, 313 F.3d 879 (5th Cir. 2002) ("The record contains nothing connecting the allegedly protected activity and the alleged retaliation, save for the fact that they both occurred in the fall of 1999."). In Strong v. Univ. Healthcare Sys., LLC, 482 F.3d 802 (5th Cir. 2007), the Fifth Circuit discussed temporal proximity in the context of retaliation:

> Thus, [the plaintiff] is left with no evidence of retaliation save temporal proximity. Again, temporal proximity alone is insufficient to prove but for causation.
> To prevent future litigants from relying on temporal proximity alone to establish but for causation, we once again attempt to clarify the issue. . . . [W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would unnecessarily tie the hands of employers.

Id. at 808 (internal citations omitted). Under these circumstances, Powell has failed to meet her burden to avoid dismissal of her retaliation claim and summary judgment is **GRANTED**.

**IV.    Louisiana Revised Statutes.**

In her Complaint, Powell references a retaliation claim under La. R.S. 23:964, 967.[4] See Record Document 1 at ¶ 17. However, in her opposition, she frames her retaliation claim under Title VII and makes no reference to La. R.S. 23:964, 967. See Record Document 19 at 3-7.

Powell has simply failed to challenge BTW's argument in favor of dismissal of her claims under Sections 964 and 967. "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived." Keelan v. Majesco Software, Inc., 407 F.3d 332, 339 (5th Cir. 2005); see also Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."). Thus, the Court finds that Powell has essentially conceded that she has no

---

[4]Section 964(A) provides:

> No employer shall discharge or in any other manner discriminate against any employee because such employee has testified or furnished any other information in any investigation or proceeding relative to the enforcement of any of the labor laws of this state.

La. R.S. 23:964(A). Section 967(A) provides:

> An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. 23:967(A).

support for her claims under Sections 964 and 967 and those claims have been abandoned. The Motion for Summary Judgment is, therefore, **GRANTED** as to these claims.

## V.     Invasion of Privacy.

In opposing the Motion for Summary Judgment, Powell summarizes her invasion of privacy claim as follows: "her right of privacy was violated when co-workers were informed of her disciplinary actions." Record Document 19 at 7. She further contends that "Frierson was the person who raised the issue" by reporting the information to Broudy and Machen. Id. at 8. Finally, Powell contends that "one of these persons had to disclose the violation to others." Id.

In Jaubert v. Crowley Post-Signal, Inc., 375 So. 2d 1386, 1388 (La. 1979), the Louisiana Supreme Court held that "the right of privacy embraces four different interests":

1.   The appropriation of an individual's name or likeness, for the use or benefit of the defendant;

2.   The unreasonable intrusion upon the plaintiff's physical solitude or seclusion;

3.   Publicity which unreasonably places the plaintiff in a false light before the public; and

4.   The unreasonable public disclosure of embarrassing private facts.

"[T]he unreasonable public disclosure of embarrassing private facts" is the only "interest" applicable to Powell's allegations. Id.

"An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest." Id. at 1389. Malicious intent on the part of the defendant is not a requirement. See id. "[T]he

reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct." Id.

Here, Powell has simply not shown with competent summary judgment evidence that BTW was involved in the release of her disciplinary information. In her deposition, Powell stated that "everybody knew I was written up." Record Document 17, Exhibit D-512 at 76. Yet, she later conceded that only one person, Teouna Fuller, mentioned the disciplinary information to her. See id. Moreover, Powell admitted that she had no personal knowledge that any BTW management employees were involved in the release of the information.[5] See id. at 76-78. Thus, Powell's argument on this issue is no more than "conclusory allegations, speculation, and unsubstantiated assertions" that are inadequate to satisfy her burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir.2002). Summary judgment is, therefore, **GRANTED** as to the invasion of privacy claim.

## VI. Louisiana Constitutional Claims.

Powell alleges violations of the Louisiana Constitution, Article I, Sections 3, 5, and 8. See Record Document 1 at ¶ 15. Article I, Section 5, provides:

> Every person shall be secure in his person, property, communications, houses, papers and effects against unreasonable searches, seizure or invasions of privacy.

Article I, Section 5 does not provide a cause of action against a private party, only a government actor. See Hennig v. Alltel Commc'n, Inc., 05-96 (La. App. 5 Cir. 5/31/05), 903

---

[5]Interestingly, the Court notes that Powell herself raised the issue of her disciplinary record during a staff meeting with over 20 people present. See Record Document 17, Exhibit D-512 at 91-92.

So. 2d 1137, 1140. There is no dispute that BTW is a private business; thus, Powell's constitutional claim must fail.

Both Article I, Section 3[6] and Article I, Section 8[7] protect against laws being established that interfere with certain fundamental rights. Again, there is no dispute that BTW is a private entity. Sections 3 and 8 simply do not apply to BTW, as the plain language of the provisions demonstrates they are directed towards governmental actors. Therefore, summary judgment is **GRANTED** as to all of Powell's constitutional claims.

## CONCLUSION

Based on the foregoing analysis, the Court finds that there are no genuine disputes as to any material facts and BTW is entitled to judgment as a matter of law. The Motion for Summary Judgment is, therefore, **GRANTED** and all of Powell's claims are **DISMISSED WITH PREJUDICE**.

---

[6]Article I, Section 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

[7]Article I, Section 8 provides:

No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof." Thus, in a similar way, this provision does not apply to BTW as a private employer and does not give Powell any right to proceed with any additional claims.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of August, 2013.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE